**Gladys ROBERTS, Admin., Plaintiff,**

v.

**UNIVERSAL UNDERWRITERS, Defendant.**

**No. 5:00CV1180.**

United States District Court,
N.D. Ohio,
Eastern Division.

June 12, 2001.

Stanley P. Aronson, Aronson & Saltzer, Akron, OH, Kenneth L. Gibson, Weick, Gibson & Lowry, Cuyahoga Falls, OH, for plaintiff.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendant.

### MEMORANDUM OF OPINION AND ORDER

POLSTER, District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's Cross Motion for Summary Judgment (ECF No. 22). For the reasons stated below, Plaintiff's motion is **DENIED** and Defendant's cross motion is **GRANTED.**

### I. FACTS

On September 24, 1999, Stephen A. Roberts was riding his own motorcycle, which was titled in his name, when he was seriously injured in an accident caused by the negligence of another driver. Five days later, Mr. Roberts died as the result of serious injuries he sustained in the accident. Although both Mr. Roberts and the negligent driver were insured at the time of the accident, the damages sustained by Mr. Roberts and his family exceed the amount of coverage available under those policies. For this reason, Plaintiff seeks a declaratory judgment stating that Mr. Roberts also had $5,000,000 in uninsured/underinsured motorists ("UM/UIM") coverage pursuant to a policy purchased by his employer, MacIntire Chevrolet.

Defendant Universal Underwriters Insurance ("Universal Underwriters") issued the policy in question ("the Policy") to MacIntire Chevrolet for the policy period November 1, 1998 to November 1, 1999. The Policy provided a package of garage and basic automobile coverage (collectively referred to as "primary coverage") as well as umbrella coverage. MacIntire Chevrolet also had the opportunity to purchase UM/UIM coverage applicable to each of the several policy types contained within the package. A selection/rejection form signed by MacIntire Chevrolet's president, Arthur MacIntyre, on October 22, 1998, indicates that the company chose to reject all UM/UIM coverage except for $25,000 in coverage for garage employees, and $1,000,000 in coverage for certain high-level employees and MacIntyre family members. In her motion for summary judgment and supplemental memoranda, Plaintiff argues that even though Mr. Roberts was not acting within the scope of his employment at the time of the accident, she is entitled to recover UM/UIM coverage under his employer's insurance policy pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). Plaintiff further argues that Defendant did not make an offer of UM/UIM coverage in accordance with Ohio Revised Code § 3937.18, and that as a result, the selection/rejection form executed by Mr. MacIntyre cannot limit UM/UIM coverage available under the policy. Plaintiff maintains that she is entitled to summary judgment because under Ohio law, where there is no valid offer and rejection of UM/UIM coverage, an insured is entitled to UM/UIM coverage in an amount equivalent to the full amount of liability coverage offered under the policy.

Defendant contends that the Ohio Supreme Court's decisions in *Selander v. Erie Ins. Group*, 85 Ohio St.3d 541, 709 N.E.2d 1161 (1999), *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), *Wolfe v. Wolfe*, 88 Ohio St.3d 246, 725 N.E.2d 261 (2000), and *Linko v. Indemnity Ins. Co. of North*

*America* (2000), infringe upon the right of freedom of contract protected by the United States Constitution and the Ohio Constitution. In addition, Defendant argues that Plaintiff's motion for summary judgment should be denied because the requirements set forth in Ohio Revised Code § 3937.18 do not apply to renewal policies. Defendant further argues that under Ohio Revised Code § 3937.18, as revised by H.B. 261, a valid offer of coverage is presumed where the rejection of coverage is in writing and is signed by the insured. Defendant maintains that it is entitled to summary judgment because Plaintiff has not come forth with any evidence that would defeat the presumption created by the signed selection/rejection form.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Both of the parties in this case concede that there are no disputed material facts and each party believes that it is entitled to judgment as a matter of law.

### B. Constitutionality of Ohio Supreme Court Decisions

 Defendant asks this Court to find that the Ohio Supreme Court's decisions in *Selander v. Erie Ins. Group*, 85 Ohio St.3d 541, 709 N.E.2d 1161 (1999), *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), *Wolfe v. Wolfe*, 88 Ohio St.3d 246, 725 N.E.2d 261 (2000), and *Linko v. Indemnity Ins. Co. of North America* (2000), infringe upon the right of freedom of contract protected by the United States Constitution and the Ohio Constitution. The Court finds that it has no jurisdiction to hold that a state supreme court case violates the contract clause of either the United States Constitution or the Ohio Constitution. *See, e.g., Fleming v. Fleming*, 264 U.S. 29, 31–32, 44 S.Ct. 246, 68 L.Ed. 547 (1924); *King v. Safeco Ins. Co.*, 66 Ohio App.3d 157, 162 163, 583 N.E.2d 1051, 1055 (1990).

### C. Applicability of § 3937.18

Ohio Revised Code § 3937.18(A) prohibits insurers from issuing a policy of automobile liability insurance without first offering the insured UM/UIM coverage in an amount equivalent to the liability coverage. The threshold issue in this case is whether the offer requirement imposed by the statute applies to the policy that is at issue in this case. After reviewing the facts of the case and the language of the statute itself, the Court finds that defendant was not required to comply with the offer requirements of Ohio Revised Code § 3937.18(A).

 The version of Ohio Revised Code § 3937.18(C) that is applicable in this case explicitly states that an insurer need not provide an offer in compliance with § 3937.18(A) to an insured who is obtaining a renewal or replacement policy unless the insured specifically requests such information:

> Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or replacement policy where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer. If a named insured or applicant has selected such coverages in connection with a policy previously issued to the named in-

sured or applicant by the same insurer, with limits in accordance with the schedule of limits approved by the superintendent, such coverages need not be provided with limits in excess of the limits of liability previously issued for such coverages unless a named insured or applicant requests in writing higher limits of liability for such coverages.

Ohio Rev.Code Ann. § 3937.18(C) (1997). Thus, there is no requirement that an insurer offer an insured UM/UIM coverage in an amount equal to its liability coverage if the policy the insured is purchasing is a renewal or replacement policy and the insured has not requested higher coverage limits in writing. *See, e.g., Lafferty v. Reliance Ins. Co.,* 109 F.Supp.2d 837 (S.D.Ohio 2000) (holding that once insured rejected UM/UIM coverage, insurer had no obligation to reoffer coverage or obtain rejection forms for subsequent renewals); *Ferguson v. McCreedy,* No. CA 98CA007175, 2000 WL 277913, (Ohio App. 9 Dist. March 15, 2000) (holding that insurer had no obligation to re-offer UM/UIM coverage on personal umbrella policy every time automobiles were added to or removed from policy where policy number remained the same and increased premiums simply maintained coverage levels).

MacIntire Chevrolet first obtained a policy from Defendant in late 1992. (ECF No. 45, p. 50). Before Defendant issued the policy, Frank Szocs, a Universal Underwriters agent, calculated the cost of UM/UIM coverage at a variety of levels and to the best of his recollection, discussed the various coverage options with Frank Montisano, who was then general manager of MacIntire Chevrolet. (ECF No. 45, p. 50; ECF No. 46, p. 9). MacIntire Chevrolet chose to obtain UM/UIM coverage at one coverage level ($1,000,000) for certain designated individuals who did not have their own automobile insurance and at another coverage level ($25,000) for

garage employees. (ECF No. 43, Ex. B). That decision resulted in substantial savings over the policy that MacIntire Chevrolet had previously purchased from another insurer. (ECF No. 45, p. 54).

In October 1998, Arthur MacIntyre, president of MacIntire Chevrolet, authorized a renewal policy with the same two levels of UM/UIM coverage that had been place since 1992. (ECF No. 46, p. 20). The premiums charged for that policy were those listed on the schedule Defendant filed with the Superintendent of Insurance at the Ohio Insurance Department earlier that year. (ECF No. 28, p. 2). There is no evidence that Mr. MacIntyre requested higher UM/UIM limits in connection with the policy renewal. Consequently, under § 3937.18(C), Defendant had no obligation to provide information on the possibility of obtaining additional UM/UIM coverage.

### D. Validity of the Offer and Rejection of UM/UIM Coverage

Even if Defendant were required to comply with § 3937.18(A), Plaintiff is unable to establish that Defendant failed to satisfy the requirements of the statute.

Prior to 1997, § 3937.18 offered little guidance as to the form that an offer or rejection under the statute must take in order to satisfy the requirements of subsections (A) and (C). The statute's silence on such issues resulted in a sizeable body of case law regarding the required form of an offer and rejection of coverage under the statute. *See, e.g., Gyori v. Johnston Coca–Cola Bottling Group, Inc.,* 76 Ohio St.3d 565, 669 N.E.2d 824 (1996) (requiring a written offer and rejection of coverage); *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.,* 85 Ohio St.3d 660, 665, 710 N.E.2d 1116 (1999) (holding that spouse of employee killed in an automobile accident while

acting outside the scope of his employment was entitled to recover underinsured motorists coverage under employer's policy up to full amount of liability coverage where insurer failed to present the employer with written offer of underinsured motorists coverage in accordance with Ohio Revised Code § 3937.18); *Linko v. Indemnity Ins. Co. of North America,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000) (holding that insurer's offer must inform insured of availability of UM/UIM coverage, set forth premium, describe coverage, and state coverage limits.).

Plaintiff seeks to rely upon the above body of case law in order to establish the absence of an offer and rejection of coverage in this case. What Plaintiff fails to acknowledge is that all of the Ohio Supreme Court cases upon which she relies concern a version of § 3937.18 that is inapplicable to this case. On September 3, 1997, the Ohio Legislature adopted H.B. 261, a bill that significantly altered the requirements concerning offers and rejections of coverage under § 3937.18. Because Defendant issued the Policy in 1998 and the accident itself occurred in 1999, there is no question that the post-H.B. 261 version of the statute applies in this case. For this reason, even the recently decided *Linko v. Indemnity Ins. Co. of North America,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000), has little bearing upon whether there was a valid offer and rejection in this case. *Id.* ("We find that the rejection form in this case fails to satisfy the offer requirements of the *former* O.R.C. § 3937.18(C) as it existed during the policy period." (emphasis added)); *see also, Hindall v. Winterthur International, et al.,* No. 3:00CV7429 (N.D.Ohio March 29, 2001).

■ Section 3937.18, as amended by H.B. 261, creates a far more lenient standard for assessing the validity of an offer and rejection of UM/UIM coverage under the statute. Subsection (C) states in pertinent part:

A named insured's or applicant's rejection of both coverages as offered under division (A) of this section or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, ***shall create a presumption of an offer of coverages consistent with division (A) of this section,*** and shall be binding on all other named insureds, insureds, or applicants. [emphasis added]

Thus, under § 3937.18, as amended by H.B. 261, a signed selection/rejection form is not only a valid form of rejection, but also creates a presumption of a valid offer of coverage.

■ Plaintiff attempts to avoid the effects of § 3937.18(C) by arguing that the Superintendent of Insurance did not approve the schedule of limits applied in this case. Under Ohio law, filings by insurers with the Ohio Department of Insurance are deemed approved as of the date of filing unless expressly disapproved by the superintendent. Ohio Rev.Code Ann. § 3937.03(C)(2) (1996). The affidavit of Judith Cashman, Defendant's Regional Underwriting Manager, reveals that Defendant charged MacIntire Chevrolet rates in accordance with a schedule of limits filed with the Ohio Department of Insurance. (ECF No. 28, Exs. 1–2). Although

Plaintiff finds fault with Defendant's apparent consideration of both the number of persons insured and number of automobiles when setting rates, Defendant actually charged MacIntire Chevrolet a garage UM/UIM premium based upon the number of dealer plates. *Id.* Defendant's decision to charge a per person/married couple rate for the UM/UIM umbrella coverage does not appear to be precluded by the schedule filed with the Department of Insurance, as the schedule specifically lists "individual or married couple" as a consideration for setting premiums. *Id.* at Ex. 1. If rates were to be based solely upon the number of automobiles, there would no need for such language to be included on the schedule. In the absence of evidence indicating that the superintendent did not approve this portion of the form, the Court must assume that the schedule of rates is valid.

■ Because Mr. MacIntyre signed a selection/rejection form in accordance with a schedule of limits approved by the superintendent, Defendant is entitled to a presumption that it made a valid offer of coverage. Although the statutory presumption could be defeated with a showing that Mr. MacIntyre did not actually sign the form, was fraudulently induced to sign the form, or did not intend to select the specified coverage levels, no such evidence exists in this case. In his deposition, Mr. MacIntyre acknowledged that, in his capacity as president of MacIntire Chevrolet, he signed the selection/rejection form dated October 22, 1998. (ECF No. 46, p. 20). Mr. MacIntyre further testified that although he did not recall a specific discussion regarding UM/UIM coverage levels, he would not have signed the selection/rejection form without being aware of what he was signing:

Well, I am sure I was aware that I was acknowledging what was happening. I don't have specific recollection of arriving at these numbers, but I—for my signature I would—I believe I was aware of what was happening.

*Id.* at 38. Later in the deposition, Mr. MacIntyre reiterated: "I think that by my signature it indicates that I was aware of what was on this piece of paper." *Id.* at 41. Thus, at the time he signed the form, Mr. MacIntyre was aware of the fact that he could select UM/UIM coverage up to his liability limits, but instead chose to obtain a reduced level of coverage. The mere fact that Mr. MacIntyre is unable to recall how specific coverage levels were arrived at does not in itself defeat the presumption of an offer created by § 3937.18(C).

■ Nor is there any indication that the form itself was somehow misleading or defective. The form provides a description of UM/UIM coverage and clearly states: "By law you have the right to elect and pay for U.M. and U.I. Coverages with limits up to the auto liability limits of your Unicover Policy." (ECF No. 24, Ex. C). This language undoubtedly provided Mr. MacIntyre with sufficient notice of the availability of coverage equivalent to the company's liability limits. *See, e.g., Lafferty v. Reliance Ins. Co.,* 109 F.Supp.2d 837, 844 (S.D.Ohio 2000) (finding that rejection form stating that UM/UIM limits "cannot be greater than B.I. limits" was sufficient to inform the insured that it could obtain coverage up to the liability limits). Furthermore, Plaintiff's own evidence reveals that the Ohio Department of Insurance approved a blank version of the form several months before Mr. MacIntyre executed the form that is at issue in this case. (ECF No. 24, Ex. C).

Because Plaintiff has failed to produce evidence sufficient to defeat the presumption provided for in § 3937.18(C), the Court must assume that there was a valid offer and rejection of UM/UIM coverage.

## E. Availability of Coverage Under the Policy

The final question that the Court must address is whether Plaintiff is entitled to any UM/UIM coverage under the Policy. The form signed by Mr. MacIntyre specifies that all garage employees have $25,000 UM/UIM coverage, and Defendant acknowledged this coverage in its Cross Motion for Summary Judgment (ECF No. 22, p. 5). In its supplemental filings, however, Defendant contends that Plaintiff is excluded from any coverage because he was not driving a "covered auto" at the time of the accident. (ECF No. 52, p. 19). Although such an exclusion likely would be enforceable in a policy that specifically designates which automobiles are "covered," this policy makes no such designations. (ECF No. 43, p. 9). Consequently, the Court finds that the exclusion must be disregarded. The Court therefore finds that Plaintiff is entitled to the $25,000 in UM/UIM coverage that is indicated on the selection/rejection form.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED** and Defendant's Cross Motion for Summary Judgment (ECF No. 22) is **GRANTED.** Plaintiff's UM/UIM coverage under the Policy is limited to $25,000. There is no dispute that the difference between Plaintiff's damages and the amount collected from the negligent driver's insurance company substantially exceeds $25,000. Accordingly, the Court **ORDERS** Defendant to pay the full amount of the UM/UIM coverage ($25,000) to Plaintiff.

**IT IS SO ORDERED.**