John K. LAFFERTY, et al., Plaintiffs,

v.

RELIANCE INSURANCE COMPANY, Defendant.

No. C2–99–450.

United States District Court, S.D. Ohio, Eastern Division.

July 17, 2000.

John C. Nemeth, Columbus, OH, for plaintiffs.

Steven G. Janik, Janik & Forbes, Cleveland, OH, for defendant.

Timothy C. Ita, Sandra A. Clawson, Joseph H. Wantz, Sheila McKeon.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff John K. Lafferty sustained serious personal injuries as a result of a motor vehicle collision which occurred on December 4, 1996 in Franklin County, Ohio. At the time of the accident, Lafferty was operating a 1992 GMC pickup truck belonging to his employer, Consolidated Rail Corporation ("ConRail"), when a 1994 pickup being operated by Ian D. Hammond, in the scope and course of his employment by Mutter's Lawn Service, went left of center striking plaintiff's vehicle head-on. The plaintiffs in this action include Lafferty's wife, Karen, and his minor son, Jeffrey, each of whom assert derivative claims as a result of the injuries sustained by their husband/father. The Laffertys asserted claims against Hammond and his employer, and their insurers paid their combined policy limits of 1.5 million dollars. The Laffertys claim that their damages exceed this amount and they have presented claims against the defendant herein, Reliance Insurance Company ("Reliance"), asserting that Reliance insured the ConRail vehicle Lafferty was driving and that Reliance's policy was required to include five million dollars in underinsured motorist coverage, which should be available to cover the remainder of their claims. Plaintiffs also seek damages against Reliance for the bad faith denial of their claims.

In 1991, ConRail, through its broker and representative Alexander and Alexander of Baltimore, Maryland ("Alexander"), asked Reliance to quote on a commercial automobile liability policy covering its entire fleet of motor vehicles in all fifty states. ConRail requested a quote on a "fronting" policy with liability limits of five million dollars and a matching deductible of five million dollars. In effect, ConRail was asking Reliance to make all filings necessary to satisfy the motor vehicle financial responsibility laws of all fifty states, and to provide claims administration services while ConRail retained the risk of loss due to liability. Realizing that most states have statutory requirements relating to uninsured motorist and underinsured motorist ("UM/UIM") coverage, ConRail requested that in the proposed insurance plan such coverage should be eliminated in states where it is permissible to reject it, and that it should be written with the minimum limits permitted by statute in states where rejection is not permitted. ConRail, through Alexander, forwarded a

packet of information to Reliance which included a document entitled "Coverage Specifications", which read in part, as follows:

| Coverages | Limits |
| --- | --- |
| Liability Insurance (1) | $5,000,000 Per Accident |
| . . . | |
| Uninsured and Underinsured Motorists Insurance | Statutory or Reject where permitted |

Combined Exhibit Nos. 1 – 50 To The Declarations Of Dirk Berezovske (Exh. A) and Peter C. Ferentini, Jr. (Exh. B) To The Motion For Summary Judgment Of Defendant Reliance National Insurance Company (hereinafter "Defendant's Combined Exhibits"). On February 27, 1991, Reliance responded with a proposal which read, in part, as follows:

Proposal for: Consolidated Rail Corporation

I. *Limits of Liability* (Policy)

a) $5,000,000 Combined Single Limit per Accident;

. . . . .

c) Uninsured Motorist (minimum applicable)

II. *Deductible Limit*

First $5,000,000 Combined Single Limit

. . . . .

V. *Coverages*

Reference attached exhibit A.

Defendant's Combined Exhibits, Exh. 5, p. 2.

Exhibit A read, in part, as follows:

Exhibit A

CONSOLIDATED RAIL CORPORATION
COVERAGE SPECIFICATIONS
COMMERCIAL AUTOMOBILE INSURANCE

| Coverages | Limits |
| --- | --- |
| Liability Insurance (1) | $5,000,000 Per Accident |
| . . . | |
| Uninsured and Underinsured Motorists Insurance | Statutory or Reject where permitted |

Defendant's Combined Exhibits, Exh. 5, p. 4.

On March 15, 1991, ConRail, through Alexander, accepted the Reliance proposal. The letter of acceptance stated:

It will be necessary for Reliance to issue an automobile liability policy subject to the specifications contained in our submission . . .

Defendant's Combined Exhibits, Exh. 6, p. 1. Thereafter, on March 18, 1991, Reliance issued a document entitled "Cover Note" acknowledging that it was bound to insure ConRail for the period April 1, 1991 to April 1, 1992 for a schedule of insurance which included the following coverages:

| | |
| --- | --- |
| Liability Insurance | $5,000,000 CSL |
| . . . | |
| Uninsured/Underinsured Motorist Coverage | Statutory or Rejection Where Permitted |

Defendant's Combined Exhibits, Exh. 7, p. 1. Thereafter, Reliance issued its policy of insurance to ConRail for the period April 1, 1991 to April 1, 1992. The policy declarations listed the coverages and limits. For uninsured motorist coverage, the section for limits stated: "See Auto 2619". Defendant's Combined Exhibits, Exh. 8, p. 4. The form referenced in the declarations, Auto 2619, was included in the policy materials and is entitled: "Schedule of Limit of Liability For Uninsured Motorists Insurance—Business Auto Policy." *See* Defendant's Combined Exhibits, Exh. 8, p. 44. In this schedule, all fifty states are listed and in accordance with ConRail's specifications, the schedule indicates that uninsured motorist coverage is rejected in every state, which permits rejection, a total of twenty-nine states. In the others, limits are specified which presumably represent the minimum limits permissible in those states. For Ohio, the schedule states "Rejected". *Id.*

On June 4, 1991, ConRail, through Alexander, sent Reliance signed UM/UIM rejection forms. Defendant's Combined Exhibits, Exh. 35. The rejection form for Ohio read as follows:

IMPORTANT NOTICE TO POLICY-HOLDERS UNINSURED/UNDER-INSURED MOTORIST COVERAGE

Ohio law requires that an Automobile Liability or Motor Vehicle Liability Insurance Company offer you Uninsured and Underinsured Motorists Insurance as part of your important protection and is applicable to all automobiles on the policy.

The law also gives you the right to reject these coverages.

Please select the available options by placing an X in the appropriate box, sign your name and have your agent return the form to us.

.    .    .    .    .

Defendant's Combined Exhibits, Exh. 34.

XX OPTION 2—I reject Uninsured Motorist coverage and Underinsured Motorist coverage.

POLICY NUMBER *NKA149922300*

.    .    .    .    .

The Reliance policy was renewed annually from April 1, 1992 through April 1, 1997, without significant change.

It is plaintiffs' position that notwithstanding the fact that ConRail specifically requested a policy which excluded UM/UIM coverage in every state in which it was possible to reject such coverage, the policy included UM/UIM coverage for Ohio because Reliance failed to comply with the requirements of Ohio law with respect to offering and rejecting UM/UIM coverage.

Ohio Revised Code § 3937.18(A) provides that "No automobile liability or motor vehicle policy of insurance ... shall be delivered or issued for delivery in this state ... unless both [UM and UIM] coverages are provided to persons insured under the policy...." Under the statute, the UM/UIM coverages must be "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage...." O.R.C. § 3937.18(A)(2).

■ Paragraph C of the statute provides, in part, as follows:

The named insured may only reject or accept both coverages offered under division (A) of this section. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer....

O.R.C. § 3937.18(C). The courts of Ohio have consistently held that the uninsured motorist statute, O.R.C. § 3937.18, "should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." *Curran v. State Automobile Mutual Ins. Co.*, 25 Ohio St.2d 33, 38, 266 N.E.2d 566, 569 (1971). *See Martin v. Midwestern Group Insurance Company*, 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440 (1994). Any rejection of UM/UIM coverage must be made expressly and knowingly. *Abate v. Pioneer Mutual and Casualty Co.*, 22 Ohio St.2d 161, 258 N.E.2d 429 (1970); *Ady v. West American Insurance Co.*, 69 Ohio St.2d 593, 433 N.E.2d 547 (1982). Where there has been no express rejection by the insured, the coverage afforded by the uninsured motorist provision is provided to the insured by the operation of law. *Abate*, 22 Ohio St.2d at 161, 258 N.E.2d at 430, paragraph two of syllabus.

Plaintiffs rely heavily on the case of *Gyori v. Johnston Coca–Cola Bottling Group, Inc.*, 76 Ohio St.3d 565, 669 N.E.2d 824 (1996). The facts in *Gyori* are similar in many respects to the facts of the instant case. In *Gyori*, the plaintiff, Robert E. Gyori, Jr., was injured in an automobile

accident while driving an automobile that was owned and insured by his employer, Johnston Coca–Cola Bottling Group, Inc. ("Johnston"). The accident was caused by the negligence of an uninsured motorist. Johnston had automobile liability insurance coverage with Lumbermen's Mutual Casualty Company ("Lumbermen's") in the amount of one million dollars per accident. The specifications Johnston sent to Lumbermen's indicated that it wanted to reject UM coverage wherever possible and to obtain the statutory minimum where rejection was prohibited by law. The proposal received from Lumbermen's was consistent with the specifications and therefore did not include UM coverage for Ohio. A form to signify the acceptance or rejection of UM coverage was attached to the proposal. However, the form was not returned to Lumbermen's until more than two months after the effective date of the policy and one month after Gyori's accident.

Johnston had additional liability coverage with National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") in the amount of fifteen million dollars per accident. Johnston submitted specifications to National Union indicating that it did not want UM coverage in those states which permitted rejection of such coverage. National Union prepared a policy based on these specifications and Johnston accepted the policy. National Union did not present Johnston with a form to signify the acceptance or rejection of UM coverage.

The Supreme Court of Ohio held that National Union did not offer UM coverage to Johnston and that, "however express and knowing Johnston's actions were, they could not constitute a rejection because there was no offer made which Johnston could reject." *Id.* at 568, 669 N.E.2d at 826–827. The court held that although O.R.C. § 3937.18 does not specifically require the offer of UM coverage to be in writing, "the spirit of R.C. § 3937.18 is best served by requiring the offer to be in writing." *Id.* at 568, 669 N.E.2d at 827. With regard to Lumbermen's, the court found that it had offered UM coverage to Johnston "because it discussed UM coverage with Johnston and attached to its proposal a form that allowed Johnston to accept or reject UM coverage." *Id.* However, the court went on to hold that Johnston's rejection was ineffective because it was not received until after Gyori's accident. *Id.* at 568–569, 669 N.E.2d at 827. The court held that in order for a rejection of UM coverage to be expressly and knowingly made, it "must be in writing and must be received by the insurance company prior to the commencement of the policy year." *Id.*

On the grounds enumerated above, the court held in *Gyori* that both insurers provided Johnston with UM coverage by operation of law. Plaintiffs assert that the same result should follow in the instant case because (according to plaintiff) Reliance's offer of UM/UIM coverage did not comply with the statutory requirements and because ConRail's written rejection was not received by Reliance prior to the commencement of the policy year. Reliance responds by arguing first that its policy was a form of self-insurance for ConRail and hence, not governed by O.R.C. § 3937.18, and by arguing in the alternative that, in any event, UM/UIM coverage was properly offered and rejected under the terms of the Ohio statute.

■ The ConRail policy had a matching liability limit and deductible amount of five million dollars. ConRail was obligated to promptly reimburse Reliance for the entire amount of any payments made under the policy, and ConRail's obligation to do so was secured by a letter of credit. In effect, ConRail was a self-insurer and Reliance was providing a service which included the defense and adjustment of claims and the use of its licenses as an insurer so that ConRail could satisfy the automobile insurance requirements of the various states in which it operated motor vehicles.

In *Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310 (1986), a truck driver employed by Refiners Transport and Terminal Corporation ("Refiners") was fatally injured by an uninsured motorist while he was driving a tanker truck owned by Refiners. Refiners had satisfied Ohio's financial responsibility requirements for its fleet by using a hybrid program consisting of a financial responsibility bond for the first $100,000 of loss, coupled with excess insurance coverage, none of which contained uninsured motorist coverage. The employee's personal automobile insurance carrier brought a declaratory judgment action against Refiners alleging that Refiners was required to provide uninsured motorist coverage for its trucks. The Supreme Court of Ohio held that Refiners "was not a 'self-insurer' in the legal sense ... but rather in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." *Id.* at 49, 487 N.E.2d at 313. The court adopted the reasoning of the Court of Appeals for Summit County in the case of *Snyder v. Roadway Express, Inc.*, 7 Ohio App.3d 218, 455 N.E.2d 11 (1982), which held that the uninsured motorist statute, O.R.C. § 3937.18, did not apply to self-insurers. The Supreme Court of Ohio specifically agreed with the reasoning of the Summit County Court of Appeals that the opposite rule "would result in the absurd 'situation where one has the right to reject an offer of insurance to one's self ...;'" *Id.* at 49, 487 N.E.2d at 312. Finally, the Supreme Court of Ohio concluded:

Although public policy may well favor mandatory uninsured motorist protection for employees of self-insured employers, such a declaration must emanate from Ohio's General Assembly. The current statutes of Ohio simply do not require such protection.

*Id.* at 50, 455 N.E.2d 11.

Two Ohio courts have applied the rationale of *Refiners Transport* to matching deductible policies similar or identical to the one involved in this case. *See McCollum v. Continental Ins. Co.*, unreported, 1993 WL 382455 (Ohio App. 6 Dist.1993); *DeWalt v. State Farm Insurance Companies*, unreported, No. 96CV001173 (CP Lake County, Ohio, September 11, 1997). Indeed, the *DeWalt* case involved the same parties, ConRail and Reliance, and the same insurance policy involved in the instant case. Judge Jackson's well reasoned decision in *DeWalt* is attached as an appendix to this Memorandum Opinion and Order. The court concludes that under the matching deductible policy issued by Reliance, ConRail was a self-insurer in the practical sense and that the Reliance policy was not subject to the provisions of O.R.C. § 3937.18.

Assuming *arguendo* that the Reliance policy was governed by O.R.C. § 3937.18, the court finds that, unlike the situation in *Gyori*, here the requirements of the statute relating to rejection of UM/UIM coverage were satisfied and the policy provided no UM/UIM coverage for vehicles operated in Ohio.

Once UM coverage has been rejected, the insurance company need not provide UM coverage in subsequent renewal policies unless it is requested in writing by the insured:

Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer.

O.R.C. § 3937.18(C). ConRail, through Alexander, returned the executed rejection forms for UM/UIM coverage on June 4, 1991, a little over two months after the inception date of the original policy. Thereafter, Reliance provided ConRail with similar rejection forms each time the policy was renewed. These forms were customarily signed some time after the

effective date of the renewal and backdated to the date of renewal. Reliance has been unable to locate the signed rejection forms for Ohio for the April 1, 1994 renewal policy. In 1995 and 1996, the UM/UIM rejection form for Ohio differed from those utilized in prior years, specifically the 1995 and 1996 forms did not contain any indication that Ohio law mandated an offer of UM/UIM coverage with limits equivalent to the liability coverage being purchased.

█ Citing *Gyori*, plaintiff argues that inasmuch as the original and every subsequent form rejecting UM/UIM coverage was signed after the effective date of the coverage, there was never any valid rejection and the coverage exists as a matter of law. However, three Ohio courts of appeals have distinguished *Gyori* and refused to apply it in this fashion. *See Hammer v. Lumbermens Mutual Casualty Co.*, unreported, 1999 WL 628684 (Ohio App. 6 Dist.1999); *Hillyer v. State Farm Mutual Auto Insurance Company*, 131 Ohio App.3d 172, 722 N.E.2d 108 (1999); *Hillyer v. State Farm Ins. Co.*, unreported, 1998 WL 1093918 (Ohio App. 11 Dist. 1998). These courts concluded that even if the first rejection was not effective during the original policy period, it was effective for each of the subsequent renewal policies.

> In reliance on *Gyori*, appellants essentially contend that because Martin Hillyer did not reject the policy at the beginning of the policy year, then his rejection of the UM/UIM coverage is void ab initio. We do not agree. The record reveals that Martin Hillyer executed his rejections of the subject policies on April 4, 1990. Even if this court were to determine that these rejections were not effective during the policy periods in which they were executed, we find that these rejections would certainly have been effective when the policies each renewed both in June 1991 and, yet again, in June 1993. See *Hillyer v. State Farm Ins. Co.* (June 26, 1998),

Lake App. No. 97–L–031, unreported, 1998 WL 553188.

*Hillyer*, 131 Ohio App.3d at 179, 722 N.E.2d at 113.

█ Once ConRail had rejected UM/UIM coverage, Reliance was not required to reoffer the coverage or obtain rejection forms for the subsequent renewals. The fact that it adopted a practice of obtaining signed rejection forms for each subsequent renewal did not increase its duty beyond that required by law. *See Hammer*, 1999 WL 628684 at p. 6. ("Additionally, we find that Lumbermens' attempt to get a rejection from ADS each year did not cause the subsequent policies to be new policies. Lumbermens' internal procedure did not increase its duty beyond that required by law.") For the same reason, the change in the wording of the rejection forms used for the 1995 and 1996 renewals have no legal significance. ConRail effectively rejected UM/UIM coverage for Ohio when it sent Reliance a signed rejection form on June 4, 1991. Defendant's Combined Exhibits, Exh. 34. Even if that rejection form was not effective for the 1991 policy year, because it was not received until after the effective date of the policy, it was effective for the subsequent policy year (1992). Once ConRail effectively rejected UM/UIM coverage, Reliance was not required to provide it in any subsequent renewal policy unless ConRail requested it in writing. ConRail made no such request. Therefore, the Reliance renewal policies for the years 1992 through 1996 did not provide UM/UIM coverage for vehicles operated in Ohio.

Plaintiffs argue that ConRail's rejection of UM/UIM coverage for the initial policy period was ineffective because Reliance's offer of UM/UIM coverage did not comply with the requirements of O.R.C. § 3937.18, inasmuch as Reliance did not inform ConRail that Ohio law required it to offer UM/UIM coverage limits equal to the liability limits of five million dollars. The form Reliance used to offer Ohio UM/UIM

coverage for the original policy period was as follows:

IMPORTANT NOTICE TO POLICY-HOLDERS UNINSURED/UNDER-INSURED MOTORIST COVERAGE

Ohio law requires that an Automobile Liability or Motor Vehicle Liability Insurance Company offer you Uninsured and Underinsured Motorists insurance as part of your important protection and is applicable to all automobiles on the policy.

The law also gives you the right to reject these coverages.

Please select the available options by placing an "x" in the appropriate box, sign your name and have your agent return the form to us.

XX OPTION 1—I accept both Uninsured Motorist coverage and Underinsured Motorist coverage.

Limits
(Cannot be greater than B.I. Limits)

| SPLIT LIMIT POLICY | SINGLE LIMIT POLICY |
|---|---|
| ☐ $ 12,500/$ 25,000 | ☐ $ 25,000 |
| ☐ $ 15,000/$ 30,000 | ☐ $ 50,000 |
| ☐ $ 25,000/$ 50,000 | ☐ $ 100,000 |
| ☐ $ 50,000/$ 100,000 | ☐ $ 250,000 |
| ☐ $ 100,000/$ 300,000 | ☐ $ 350,000 |
| ☐ $ 250,000/$ 500,000 | ☐ $ 500,000 |
| ☐ $1,000,000/$1,000,000 | ☐ $1,000,000 |

XX OPTION 2—I reject Uninsured Motorist coverage and Underinsured Motorist coverage.

POLICY NUMBER *NKA149922300*
SIGNATURE /S/
NAMED INSURED *CONSOLIDATED RAIL CORP.*

Defendants' Combined Exhibits, Exh. 34.

The schedule of policy limits listed in the form ends at one million dollars. The form does not provide the opportunity to select a five million dollar limit by checking a block as it does for the one million dollar and lesser limits listed in the form. However, the form does specifically state that the limits "cannot be greater than B.I. limits." The obvious implication is that UM/UIM limits can be obtained in an amount equal to B.I. limits. It can hardly be doubted that ConRail knew it could have Ohio UM/UIM coverage equal to the five million dollar liability limit of the policy. But, of course, ConRail did not select any of the coverage limits set forth in the form, instead it selected Option 2, completely rejecting UM/UIM coverage. Thus, the schedule of limits provided for Option 1 becomes irrelevant.

The court finds that there is no genuine dispute as to any material fact and that Reliance is entitled to judgment as a matter of law. Since ConRail, under the matching deductible policy issued by Reliance, was a *de facto* self-insurer, Reliance was not required to offer UM/UIM coverage to ConRail under O.R.C. § 3937.18. Even if the statute did apply to the policy in question, UM/UIM coverage was offered by Reliance and effectively rejected by ConRail.

The Clerk shall enter a final judgment in favor of the defendant, dismissing plaintiffs' complaint with prejudice, at plaintiffs' costs.

It is so ORDERED.

### *OPINION AND JOURNAL ENTRY*

This matter is before the court to address defendant Reliance National Insurance's (Reliance) motions for summary judgment and for sanctions against plaintiff George Dewalt. Dewalt submitted a brief in opposition. Although granted two extensions of time, defendant State Farm Insurance Companies did not submit a reply brief.

Dewalt was injured in the course and scope of his employment with consolidated Rail Corporation (Conrail) while driving a truck. The other driver was at fault and his insurance company tendered the limits of his policy. At issue is whether Dewalt is entitled to underinsured motorist coverage under Conrail's policy. Conrail and Reliance claims there is no such coverage.

Conrail had a "matching deductible" policy with Reliance in which Conrail had

insurance coverage for five million dollars with an accompanying five million dollar deductible. Reliance provided no insurance in excess of this amount. While Reliance would process and pay claims under this policy, Conrail was obligated to reimburse Reliance for any claims paid out within the five million dollar limit plus certain other expenses. In effect, the policy was a "fronting agreement" in which the deductible amount is the same as the policy limits and Conrail relied on Reliance to file proof of insurance as required by various Ohio governmental agencies. Although Conrail did not file a certificate of self-insurance under Ohio's Financial Responsibility Act (R.C. 4509.45(D)), Reliance contends Conrail was self insured in the practical rather than legal sense since it has retained the risk of loss rather than shifting it to an insurer. See, *e.g., Physicians Ins. Co. v. Grandview Hosp.* (1988), 44 Ohio App.3d 157, 158, 542 N.E.2d 706. Reliance asserts that Conrail, as a self-insured, is not subject to the requirements of R.C. 3937.18 concerning uninsured/underinsured motorist (UM/UIM) coverage. In addition, Reliance claims Conrail knowingly and expressly rejected UM/UIM coverage in writing in the prior policy year and that Reliance did not have to offer and obtain another express, written rejection in the following policy period in which the accident occurred. Dewalt claims Conrail is not self-insured and thus Reliance must fully comply with R.C. 3937.18 if there is to be a valid rejection of UM/UIM coverage. Dewalt maintains that Reliance has failed to meet its burden of proof that there was an express rejection and that under R.C. 3937.18(A), UM/UIM coverage is included in the policy by operation of law.

The court finds that because Conrail agreed to assume the risk of loss up to the policy limits, it is in fact self-insured in a practical sense although not self-insured in accordance with R.C. 4509.72 and R.C. 4509.45(D). The policy did not shift the risk of loss to the insurer and indeed, the policy required Conrail to even assume certain administrative costs of Reliance in processing the claims. Although there is apparently no case law on whether entities effectively self-insured are required to comply with R.C. 3937.18 concerning UM/UIM coverage, there is case law concerning statutory self-insurers and those who post financial responsibility bonds. In *Snyder v. Roadway Express, Inc.* (1982), 7 Ohio App.3d 218, 219, 455 N.E.2d 11, the court held that R.C. 3937.18 was not intended to apply to self-insurers. The court noted that nowhere in the statute does it mention self-insurers and that holding otherwise would mean the statute would be giving one the right to reject an offer of insurance to one's self. *Id.* The court concluded that it was not likely that the legislature intended such a result. This reasoning was adopted by the Ohio Supreme Court in *Grange Mut. v. Refiners Transport & Terminal* (1986), 21 Ohio St.3d 47, 51, 487 N.E.2d 310, in which the court held that the UM/UIM provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals. Applying this logic one step further, this court finds that a self-insurer in a practical sense is not required to comply with R.C. 3937.18.

Even if Conrail is not a self-insurer, Reliance has met its burden of showing that Conrail expressly made an knowing rejection of UM/UIM coverage. It is well settled that insurance companies must offer UM/UIM coverage whenever a motor vehicle liability policy is delivered or issued in this state. R.C. 3937.18(A); *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 567, 669 N.E.2d 824. Failure to do so results in the insured acquiring UM/UIM coverage by operation of law. *Id.,* citing *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 163, 258 N.E.2d 429. Rejection of UM/UIM coverage must be made expressly and knowingly. *Id.;* R.C. 3937.18(C). The insurer bears the burden of demonstrating that the insured made a knowing rejection of the coverage. *Id.*

citing *Ady v. West Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 433 N.E.2d 547. In order to make a rational decision to reject coverage, an insured has to be aware of the provision, understand its terms and agree to it. In addition, this rejection must be in writing. *Id.* at 568. However, once an insured has rejected UM/UIM coverage, the insurer is not required to reoffer such coverage when the same policy is renewed. R.C. 3927.18.

The evidence shows that Conrail had a policy of rejecting UM/UIM coverage whenever possible and obtaining the statutory minimum when rejection was prohibited by law. It rejected UM/UIM coverage in those states which permitted rejection of such coverage. The policy in question covers motor vehicle liability in all fifty states and was negotiated by persons with insurance backgrounds and in a commercial setting. The evidence shows that Conrail expressly rejected in writing UM/UIM coverage for Ohio for the policy period just before the accident. As such, Reliance was not required to reoffer such coverage in the following year. In the following year, Reliance provided Conrail an endorsement to its policy which provided the status of UM/UIM coverage for all fifty states. Among the states in which UM/UIM coverage was rejected was Ohio. It is clear that Conrail was well aware of the availability of UM/UIM coverage, that it understood it and that it made an informed and knowledgeable waiver of that coverage.

The motion of defendant Reliance National Insurance for summary judgment against plaintiff George Dewalt is granted. The motion of defendant Reliance National Insurance for sanctions against George Dewalt is denied. The court finds that the pleadings and motions of plaintiff George Dewalt were made in good faith and with sufficient grounds to support them.

**IT IS SO ORDERED.**