OPINION
{¶ 1} Plaintiff-appellant Todd C. Grubb appeals from a summary judgment rendered against him on his complaint against defendants-appellees Personal Service Insurance Company and Michigan Mutual Insurance Company for underinsured motorist coverage. He contends that the trial court erred in rendering summary judgment, and that it also erred by failing to stay the action below pending the decision inFerrando v. Auto Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217. That case has now been decided. Based upon that decision, we agree with Grubb that there is a genuine issue of material fact whether either Personal Service Insurance Company or Michigan Mutual Insurance Company was prejudiced by Grubb's failure to have provided timely notice of his claims, or by his failure to have preserved each insurance company's rights of subrogation. We also reject Michigan Mutual's alternative arguments that: (1) Grubb is not an insured under its policy; (2) its policy is not covered by the uninsured/underinsured requirements of R.C. 3937.18, because its insured, Daimler Chrysler, is really self-insured; and (3) Grubb is not entitled to coverage because his damages did not exceed Daimler Chrysler's deductible. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 2} In April, 1997, Grubb sustained injuries when the motorcycle he was operating was hit by a van operated by Marva Moore. Grubb filed suit against Moore. In March 1998, the suit was settled with the agreement that in exchange for the payment of Moore's liability insurance limit of $100,000, Grubb would dismiss the case and release Moore from further liability.
 {¶ 3} At the time of the accident, Grubb was employed by Daimler Chrysler Corporation, and he resided with his mother, Carol Grubb, who was employed by the Valley View Local Schools. Daimler Chrysler had in force an insurance policy providing uninsured/underinsured motorist coverage. The policy was issued by defendant-appellee, Michigan Mutual Insurance Company. Valley View Local Schools had in force an insurance policy providing uninsured/underinsured motorist coverage that was issued by defendant-appellee, Personal Service Company.
 {¶ 4} Grubb brought an action against Michigan Mutual Insurance Company ("MMI") and Personal Service Company ("PSC") seeking underinsured motorists coverage under both policies pursuant to Scott-Pontzer v.Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. Both insurance companies filed motions for summary judgment contending that Grubb was not entitled to coverage because he had failed to comply with policy requirements pertaining to timely notice and notice of settlement and subrogation rights. MMI also made alternative arguments in support of its motion which will be discussed below. The trial court rendered summary judgment against Grubb upon a finding that he had failed to abide by the policy requirements regarding notice and subrogation rights. From this judgment Grubb appeals.
 II {¶ 5} Grubb's First Assignment of Error states as follows:
 {¶ 6} "Appellant's Joint Motion For Continuance And Stay Should Have Been Granted Because The Supreme Court's Decision In Ferrando v.Auto Owners Mut. Ins. Co. And Luckenbill v. Midwestern Indem. Co. Would Have Provided The Common Pleas Court With Judicial Economy And Important Guidance With Respect To The Issues In This Case."
 {¶ 7} Grubb argues that the trial court should have granted his motion for a stay of proceedings pending the resolution of Ferrando v.Auto Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217 in the Ohio Supreme Court.
 {¶ 8} We need not address this argument as it has been rendered moot by our determination that the matter must be remanded for further proceedings. Accordingly, the First Assignment of Error is overruled as moot.
 III {¶ 9} Grubb's Second and Third Assignments of Error are as follows:
 {¶ 10} "Summary Judgment Was Erroneously Granted To Defendant-appellee Michigan Mutual Insurance Company, Because Appellant Fulfilled His Obligations Under The Michigan Mutual Policy And He Is Entitled To UM/UIM Coverage.
 {¶ 11} "Appellant Did Not Destroy Michigan Mutual's Subrogation Rights Since Subrogation Is Not A Precondition That Would Prevent Appellant From Recovering Um/uim Coverage Under The Michigan Mutual Policy."
 {¶ 12} Grubb contends that the trial court erred in granting summary judgment because he did not violate any provisions regarding notice or consent to settlement and protection of subrogation rights. MMI contends that the trial court did not err in rendering summary judgment. It also advances the following as alternative reasons for affirming the trial court's grant of summary judgment. Specifically, MMI contends (1) that Grubb does not qualify as an insured under its policy; (2) that its policy is not subject to R.C. 3937.18; and (3) that Grubb is not entitled to coverage unless his damages exceed Daimler Chrysler's deductible.
 {¶ 13} We review the appropriateness of summary judgment de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citation omitted. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-70, 1998-OH-389. Additionally, "an appellate court can decide an issue on grounds different from those determined by the trial court, so long as the evidentiary basis upon which the appellate court relies was addressed before the trial court and is a matter of record." (Citation omitted.) Wodrich v. Federal Ins. Co., Greene App. No. 02CA3, 2002-Ohio-5122, ¶ 20. With this standard in mind, we first address MMI's alternative arguments regarding Grubb's entitlement to coverage under the policy prior to reaching Grubb's arguments regarding compliance with policy requirements.
 {¶ 14} MMI argues that Grubb does not qualify as an insured because he is not named as an insured under the policy and because coverage does not arise pursuant to Scott-Pontzer, supra.
 {¶ 15} In Scott-Pontzer, the Supreme Court found that when the only named insured is a corporate entity, the use of the word "you" in the description of who is an insured is essentially meaningless because "a corporation itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. At 664. Thus, the court reasoned that "you" could be construed to include the employees of the corporation, thereby extending coverage to the employees of the named corporation. Id.
 {¶ 16} However, in White v. American Manufacturers Mut. Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125, we concluded that the ambiguity addressed in Scott-Pontzer is eliminated when the "Drive Other Car" endorsement of a similarly-worded policy includes, as named insureds, specific individuals. Id. at ¶ 32. MMI relies on this holding as support for its claim that Grubb is not entitled to coverage pursuant to Scott-Pontzer. Specifically, MMI notes that, while the named insured provisions refer only to Daimler Chrysler as the insured, its "Drive Other Car" endorsement broadens its policy to language to include the following: "Employee, spouse or any relative while a resident of the same household as per listing on file [with] the insured." Thus, it argues that "you" is not rendered meaningless, because it refers to certain individuals as insureds.
 {¶ 17} We agree with this argument to an extent. The policy does refer to individuals — namely employees and their spouses; however, it only applies to employees listed on a file held by Daimler Chrysler. This listing is not part of the record before us. If such a listing exists, and Grubb is not a named insured on the list, then no coverage exists, and none arises by operation of law. Conversely, if no such listing exists, then the policy may fall within the scope ofScott-Pontzer. In other words, if the list does not exist, and thus, there are no named insureds other than the company, then arguably, aScott-Pontzer ambiguity exists. This issue must be addressed by the trial court upon remand. We cannot find that Daimler Chrysler met its burdens under Civ.R. 56 without the list, which is not in the record.
 {¶ 18} We next turn to MMI's contention that its policy is not subject to R.C. 3937.18. The version of R.C. 3937.18 relevant to this case provides that uninsured/underinsured motorists coverage be offered with every policy of insurance delivered, or issued for delivery in this state, in an amount equivalent to the amount of liability coverage. In the absence of a valid offer and rejection, UM/UIM coverage in an amount equal to the liability coverage limit is imputed as a matter of law. However, in Ohio, it has been determined that R.C. 3937.18 is not applicable to self-insurers who comply with R.C. 4509.45(E) and 4509.72.Snyder v. Roadway Express, Inc. (1982), 7 Ohio App.3d 218, syllabus. The Supreme Court extended the self-insurer exception to R.C. 3937.18 to include companies that purchase financial responsibility bonds. GrangeMut. Cas. Co. v. Refiners Transport and Terminal Corp. (1986),21 Ohio St.3d 47, syllabus. The court reasoned that a company's status as a bond principal renders it a self-insurer in the "practical sense". Id. at 313.
 {¶ 19} MMI contends that, under Ohio law, Daimler Chrysler must be considered self-insured, and therefore exempt from R.C. 3937.18, because its insurance policy is merely a "fronting policy." "A `fronting agreement' is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states." Tucker v. Wilson, Clermont App. No. CA2002-01-002,2002-Ohio-5142. In practical effect, this type of policy typically involves the purchase of a liability policy with a deductible in the same amount as the coverage. In this case, the MMI policy has a deductible of $4,950,000 and liability limits of $5,000,000, leaving a potential coverage of up to $50,000 where the loss exceeds $4,950,000. MMI and Daimler Chrysler also executed various other side agreements whereby the companies agreed that Daimler Chrysler must indemnify MMI for any amounts it may pay on a claim.
 {¶ 20} A review of the issue of whether companies that utilize fronting policies are to be deemed self-insured reveals a split of authority in the few appellate districts in Ohio that have addressed the matter. The courts that have applied the self-insured exception to fronting policies have relied upon the "practical sense" language ofGrange, supra, and have extended that ruling to include companies that utilize fronting policies. See, e.g., McCollum v. Continental Ins. Co.
(1993), Lucas App. No. L-92-141; Lafferty v. Reliance Ins. Co. (S.D.Ohio 2000), 109 F. Supp.2d 837.
 {¶ 21} We find more compelling the decision of the Tenth District Court of Appeals in Dalton v. Wilson, Franklin App. No. 01AP-014,2002-Ohio-4015, wherein the court held that fronting agreements do not constitute self-insured schemes. The Tenth District noted that the courts that have found these agreements to constitute self-insurance have extended the holding in Grange, supra, in ways not contemplated by the Ohio Supreme Court. Id. at ¶ 75. The court further stated that a company cannot be allowed to fail to comply "with the statutory requirements for invoking self-insured status, [and at the same time seek to] declare itself a self-insurer for purposes of avoiding the requirements of the UM/UIM statute." Id. at ¶ 76. "As stated by the Montgomery County Court of Common Pleas in Roberts v. State Farm MutualAuto. Ins. Co. (2001), Montgomery C.P. No. 00-CV-0886: `It may be well and good and entirely lawful for a `fronting agreement' * * * to spare [an entity] the expense and potential administrative quagmires of formal registration in every state, territory and country where it does business and for these `devices' to provide [an entity] the use of [an insurer's] filings and claims service, but they do not paralyze or mute the walking and quacking duck of insurance coverage.'" Id. at ¶ 77-78.
 {¶ 22} We conclude that Daimler Chrysler's fronting agreement with MMI does not render it self-insured. Accordingly, the subject policy of insurance is not exempted from the requirements of R.C. 3937.18.
 {¶ 23} We next address MMI's contention that Grubb's damages must exceed the deductible amount before he can recover under the MMI policy. In essence, MMI argues that any UM/UIM coverage afforded under its policy does not begin until Grubb has exceeded the amount of primary liability insurance offered by Daimler Chrysler via its self-insurance deductible. MMI cites Titman v. Penn-America Ins. Co. (Mar. 26, 1987), Cuyahoga App. No. 51915 and Moyer v. Transamerica Ins. Co. (Oct. 22, 1987), Cuyahoga App. No. 53524 as support for this argument. Our review of these cases reveals that both involve excess coverage/umbrella policies rather than, as in the case at bar, primary liability policies. Therefore, we find these cases inapplicable. MMI does not cite, and we cannot find, any other cases to support this argument. Thus, we find that this argument is not well-taken.
 {¶ 24} Next, we turn to Grubb's argument. Grubb contends that he did not violate any notice and consent provisions in the MMI policy. He also contends that any lack of notice did not prejudice MMI. Therefore, he contends that the trial court erred in rendering summary judgment against him.
 {¶ 25} That MMI did not receive notice of a claim or notice regarding settlement with the tortfeasor until well after the subject accident and settlement, is not in dispute. The trial court determined that this failure of notice constituted a breach of contract, requiring judgment against Grubb.
 {¶ 26} The Ohio Supreme Court has just recently addressed the issue of notice in Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d 186, 2002-Ohio-7217, wherein it opined that, "* * * when an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Id. at ¶ 81. The Court also stated that the breach of consent-to-settle or other subrogation-related provisions in UIM policies is presumed to be prejudicial to the insurer absent evidence to the contrary. Id. at ¶ 88.
 {¶ 27} The Court further set forth a two-step approach for determining whether either of these provisions has been breached, and the effect thereof:
 {¶ 28} "The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited? * * *
 {¶ 29} "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances'. * * * If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.
 {¶ 30} "In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. * * * If [it] was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." Id. at ¶ 89-91.
 {¶ 31} Therefore, according to Ferrando, the inquiry whether UIM coverage is owed does not stop upon a finding of breach of a policy provision. Instead, a trial court must consider the effect of the breach. If the breach is not prejudicial to the insurer, coverage will be owed.
 {¶ 32} In this case, the trial court ended its inquiry at its finding of breach, without considering the effect of the breach. We conclude that this matter must be remanded for further consideration, in accordance with the holding in Ferrando.
 {¶ 33} Accordingly, Grubb's Second and Third Assignments of Error are sustained.
 IV {¶ 34} Grubb's Fourth and Fifth Assignments of Error are as follows:
 {¶ 35} "Summary Judgment Was Erroneously Granted To Defendant-appellee, Personal Service Company, Because Appellant Fulfilled His Obligations Under The Personal Service Policy And He Is Entitled To UM/UIM Coverage.
 {¶ 36} "Appellant Did Not Destroy Personal Service's Subrogation Rights Since Subrogation Is Not A Precondition That Would Prevent Appellant From Recovering Um/uim Coverage Under The Personal Service Policy."
 {¶ 37} Grubb contends that he did not violate any provisions regarding notice and protection of subrogation in the PSC policy, and that the trial court therefore erred in rendering summary judgment against him.
 {¶ 38} For the reasons set forth in Part III, above, regarding notice and breach, we conclude that the trial court erred in rendering summary judgment, because it did not consider whether Grubb's violation of the notice and protection-of-subrogation provisions prejudiced PSC. To that extent, Grubb's Fourth and Fifth Assignments of Error are sustained.
 V {¶ 39} Grubb's Second, Third, Fourth and Fifth Assignments of Error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.
GRADY and YOUNG, JJ., concur.