OPINION.
{¶ 1} Marlene Dirksen is appealing the judgment of the Darke County Common Pleas Court, which granted summary judgment in favor of American Home Assurance Company ("AHA").
 {¶ 2} On August 4, 1999, Rebecca Philpot caused a collision between her vehicle and the vehicle driven by Marlene Dirksen. Dirksen was injured in the accident and so were her three daughters, who were also in the vehicle. Dirksen, along with her husband and three daughters, filed this suit against the tortfeasor, Philpot, and also against AHA, who had issued a business auto policy and a commercial general liability policy to Dirksen's husband's employer-Griffon Corporation. Dirksen has since settled with Philpot's insurance company for the policy limits with AHA's approval.
 {¶ 3} On July 26, 2001, the Dirksens brought this suit for personal injuries, uninsured/underinsured motorist ("UM/UIM") coverage and declaratory judgment. In the action for declaratory judgment, the Dirksens sought a ruling from the trial court that the business auto policy issued by AHA to Griffon Corporation provided underinsured motorist coverage to the Dirksens. Also in the declaratory judgment, the Dirksens sought a judgment that the commercial general liability policy was an automobile liability or motor vehicle liability policy of insurance under which AHA had failed to offer UM/UIM coverage. Therefore, UM/UIM coverage was impressed by operation of law, and the Dirksens were insureds under the policy. The parties filed cross motions for summary judgment, and the trial court granted AHA's motion for summary judgment, finding no coverage under either policy. The parties have filed these appeals from that order.
 {¶ 4} The Dirksens raise the following assignments of error:
 {¶ 5} "[1.] The trial court erred in failing to find that the plaintiffs Marlene Dirksen, Jeffrey Dirksen, Stacy Lynn Dirksen, Tracy R. Dirksen and Macy M. Dirksen are insureds under the commercial auto policy issued by American Home Assurance Company to Griffon Corporation.
 {¶ 6} "[2.] The trial court erred in failing to find that the commercial general liability policy issued by American Home Assurance Company to Griffon Corporation was a motor vehicle liability policy; that American Home Assurance Company failed to offer UM/UIM coverage and thus said UM/UIM coverage was impressed upon the policy by operation of law for the benefit of the insureds, Marlene Dirksen, Jeffrey Dirksen, Stacy Lynn Dirksen and Macy M. Dirksen."
 {¶ 7} AHA has filed a cross appeal raising the following additional assignments of error:
 {¶ 8} "[3.] Whether the trial court erred when it denied summary judgment in favor of American Home on the additional basis that the Griffon Corporation risk management program is exempt from R.C. 3937.18
because Griffon is `self-insured in the practical sense.'
 {¶ 9} "[4.] Whether the trial court erred when it denied summary judgment in favor of American Home on the additional basis that Griffon's selection of a lesser limit of uninsured/underinsured motorists coverage under the CA fronting policy complies with R.C. 3937.18."
 {¶ 10} Initially, we note that our review of the trial court's decision to grant summary judgment is de novo. Helton v. Scioto Cty. Bd.of Commrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183, 1997-Ohio-221;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
First Assignment of Error:
 {¶ 11} The Dirksens argue that the trial court erred in granting AHA's motion for summary judgment on the business auto policy on the basis of its finding that the Dirksens were not insureds under the policy pursuant to White v. American Manufacturers Mut. Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125. We agree.
 {¶ 12} White involved commercial auto liability policies in which the plaintiffs argued that they were insured under the policies pursuant to Scott-Pontzer v. Liberty Mut. Ins. Co. (1999), 85 Ohio St.3d 660,1999-Ohio-292. In Scott-Pontzer, the insurance policy stated:
 {¶ 13} "B. Who is An Insured
 {¶ 14} "1. You.
 {¶ 15} "2. If you are an individual, any family member.
 {¶ 16} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 17} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 18} The Ohio Supreme Court interpreted this language to mean that "you" could be construed to include employees of the corporation because a corporation can only act through persons. Id. Also, the policy insured against bodily injury or death, which the corporation could not suffer, and therefore the policy would be meaningless if no live persons were covered by the policy. Id. In White, the policy had an identical "Who is an Insured" section. White, supra. However, one of the White
policies included a "Drive Other Car" endorsement that stated:
 {¶ 19} "The following is added to WHO IS AN INSURED:
 {¶ 20} "Any individual named in the Schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except:
 {¶ 21} "Any auto owned by that individual or by any `family member.'" Id.
 {¶ 22} The Schedule in the White policy named "ANY EXECUTIVE OFFICER OR CLASS I, II OR III DIRECTOR OF THE NAMED INSURED." Id. In the other policy in White, the endorsement described the individuals who were "insureds" as executive officers and their spouses. Id. We determined inWhite that the listing of actual individuals, who could sustain bodily injury and death, removed the ambiguity that Scott-Pontzer found in the insurance policies. Id. Therefore, as there was no longer any ambiguity, the only individuals covered under the UM/UIM section of the policy were the individuals listed in the endorsement. Id.
 {¶ 23} This Court addressed a similar issue in Grubb v. MichiganMut. Ins. Co., Montgomery App. No. 29575, 2003-Ohio-1558. In Grubb, we reiterated our holding in White that the ambiguity addressed inScott-Pontzer is eliminated when a "Drive Other Car" endorsement includes specific individuals as named insureds. Id. In Grubb, although the named insured provisions referred only to the corporation as the insured, the endorsement included, "employee, spouse or any relative while a resident of the same household as per listing on file [with] the insured." Id. TheGrubb court stated that, without evidence of the contents of the document on file with the insured, there was insufficient evidence that the policy listed specific individuals as insureds. Id. Thus, the Grubb court remanded the matter to the trial court to determine what, if anything, the document on file stated, cautioning that if no document was on file or if there were no named insureds other than the company, aScott-Pontzer ambiguity arguably existed. Id.
 {¶ 24} In the instant case, the underlying business auto policy appears at first glance to be the same as that in White. The business auto policy has the same language in its "Who is an Insured" provision as the policy in Scott-Pontzer. As in White, AHA's business auto policy has a "Drive Other Car" endorsement. The trial court relied on White and found that, because AHA had a similar endorsement to White, the Dirksens were not insureds under the policy. However, there is an essential difference between the White policy and the business auto policy issued by AHA. Here, the endorsement provision reads:
 {¶ 25} "C. Changes in Auto Medical Payments And Uninsured And Underinsured Motorists Coverages
 {¶ 26} "The following is added to Who Is An Insured:
 {¶ 27} "Any individual named in the Schedule and his or her `family members' are `insured' while being struck by any `auto' you don't except
 {¶ 28} "Any `auto' owned by that individual or by any `family member.'"
 {¶ 29} Under Name of Individual, the Schedule only states "INCLUDED". The only named insured on the entire endorsement is Griffon Corporation. Unlike White, the policy issued by AHA does not name any persons who are covered under the policy. Therefore, we cannot come to the same result as in White, because without named persons who are included, we cannot determine that the Dirksens were intended to be excluded. Without the naming of specific persons in the Schedule of the Drive Other Car endorsement, the ambiguity present in Scott-Pontzer remains. The trial court erred in relying upon White to conclude that the Dirksens were not an insured under the policy. In the event that AHA can offer evidence that "INCLUDED" in some way names specific persons or individuals, the case may then fall in line with White, but absent such evidence White is not dispositive of this case. The first assignment of error is sustained, and the matter is reversed and remanded.
Second Assignment of Error:
 {¶ 30} The Dirksens argue that the trial court erred in determining that the commercial general liability policy issued by AHA to Griffon Corporation was not an automobile liability or motor vehicle liability policy of insurance as defined by R.C. 3937.18(L)(1). Thus, they argue that the trial court erred in its determination that UM/UIM coverage was not imposed by operation of law for the benefit of the Dirksens pursuant to R.C. 3937.18(A). We disagree.
 {¶ 31} At the time of the accident, R.C. 3937.18(L)(1) defined an "automobile liability or motor vehicle liability policy of insurance" as "any policy of insurance that serves as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance." The Ohio Supreme Court has stated that a policy does not provide "motor vehicle liability coverage" simply because it includes incidental coverage for a narrow class of motorized vehicles that "are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property."Davidson v. Motorists Mut. Ins. Co., 91 Ohio St.3d 262, 267,2001-Ohio-36.
 {¶ 32} In Agudo De Uzhca v. Derham, Montgomery App. No. 19106,2002-Ohio-1814, this Court examined a general liability policy that excluded coverage for any auto except for autos parked "on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured." The Agudo De Uzhca court held that this provision did not convert the general liability policy into an automobile liability or motor vehicle liability policy of insurance. Id. The parked auto exception in the policy did not convert the policy into one providing proof of financial responsibility for owners or operators of any vehicle. Id. Also, the policy did not provide coverage for vehicles that could be used on public roads. Id. Thus, this Court determined that the parked auto provision did not convert the commercial general liability policy into an automobile liability policy. Id.
 {¶ 33} In Lane v. State Auto Ins. Cos., Miami App. No. 2002-CA-10, 2002-Ohio-5128, the Court examined a general liability policy that had a provision issuing coverage for mobile equipment. The policy inLane provided coverage for mobile equipment that it described as "land motor vehicles that meet one or more of the following criteria * * *. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto: (1) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); (2) geophysical exploration, lighting, and well servicing equipment; and (3) cherry pickers and similar devices used to raise or lower workers." Id. at ¶ 22. The Lane court explained that, because these vehicles were clearly not designed to transport people on public roads, the mobile equipment section did not convert the policy into "motor vehicle liability coverage". Id. at ¶ 24.
 {¶ 34} Here, the commercial general liability policy issued by AHA provided coverage for autos parked "on or on the ways next to premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured." Additionally, the policy provided coverage for bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment". The policy continued on to define "mobile equipment" as "(2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers and (3) air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment. These particular items of mobile equipment are referred to as "autos" for the purpose of this coverage. Further, endorsement CG 99 01 1185, MOTOR VEHICLE LAWS states
 {¶ 35} "* * * With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits of those coverages."
 {¶ 36} The policy provisions identified by the Dirksens are similar to the policy provisions examined in Agudo De Uzhca and Lane that were held not to constitute an automobile liability or motor vehicle liability policy of insurance. In Agudo De Uzhca, we determined that provisions providing coverage for parked autos in commercial general liability policies, as in this case, do not convert the policy into an automobile liability or motor vehicle liability policy of insurance. We see no reason to reach a different result in this case. As for the mobile equipment provision in this commercial general liability policy, we reach the same conclusion as in Lane. The types of vehicles covered under the commercial general liability policy are not designed to transport people on public roads. Thus, the coverage of these vehicles is merely incidental. As in Lane, the mobile equipment provision of the commercial general liability policy does not convert the policy into an automobile liability or motor vehicle liability policy of insurance. The trial court did not err in granting AHA's motion for summary judgment based on its finding that the commercial general liability policy was not an automobile liability or motor vehicle liability policy of insurance and thus UM/UIM coverage was not imposed by operation of law. The second assignment of error is without merit and is overruled.
Third Assignment of Error:
 {¶ 37} AHA argues that the trial court erred in denying its motion for summary judgment on the ground that the underlying business auto policy in this case was a fronting policy and that, in a practical sense, Griffon Corporation was self-insured. We disagree.
 {¶ 38} AHA argues that Griffon Corporation should be considered self-insured and therefore exempt from R.C. 3937.18 because the insurance policy is a "fronting policy". A "fronting policy" is an insurance term wherein the corporation "is renting an insurance company's licensing and filing capabilities in a particular state or states." Tucker v. Wilson, Clermont App. No. CA2002-01-002, 2002-Ohio-5142. This typically involves a situation wherein a corporation purchases a liability policy with a deductible in the same amount as the coverage.
 {¶ 39} Ohio courts are split regarding whether companies that utilize fronting policies should be considered self-insured and thus whether R.C. 3937.18 applies. Compare McCollum v. Continental Ins. Co.
(1993), Lucas App. No. L-92-141 (holding that R.C. 3937.18 did not apply because the company was self-insured in a practical sense); Lafferty v.Reliance Ins. Co. (S.D.Ohio 2000), 109 F. Supp.2d 837 (finding that the company was self-insured in a practical sense and thus R.C. 3937.18 did not apply) with Dalton v. Wilson, Franklin App. No. 01AP-014,2002-Ohio-4015 (holding that despite a fronting policy the company was not self-insured and R.C. 3937.18 still applied); Grubb, supra (agreeing with Dalton, this Court found that R.C. 3937.18 still applied despite the company's fronting policy because the company was not self-insured). Several cases have held that a corporation with a fronting policy that has a deductible equal to the limits of liability is self-insured because the risk of loss never left the corporation. Lafferty, supra; McCollum, supra. Thus, these courts reason that the corporation was self-insured in a practical sense, and therefore, R.C. 3937.18 should not apply. Id. However, this Court, along with at least one other district, has reasoned that fronting policies do not make corporations self-insured and immune from R.C. 3937.18's requirements. Grubb, supra; Dalton, supra.
 {¶ 40} In order to determine whether a corporation is self-insured, the court must look to who bears the risk of loss. Dalton, supra, at ¶ 64. "[W]hile insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting."Jennings v. Dayton (1996), 114 Ohio App.3d 144, 148. "Self-insurance is not insurance; it is the antithesis of insurance." Physicians Ins. Co. ofOhio v. Grandview Hosp. Med. Ctr. (1988), 44 Ohio App.3d 157, 158.
 {¶ 41} AHA urges us to distinguish Grubb and find as in Lafferty
that Griffon Corporation was self-insured in the practical sense because the policy was a fronting policy and thus that R.C. 3937.18 does not apply. However, we need not reach the distinction between Grubb andLafferty as the business auto policy issued by AHA was not a fronting policy. Therefore, the risk of loss was not retained by Griffon Corporation and, thus, Griffon Corporation was not even arguably self-insured in the practical sense.
 {¶ 42} Here, Griffon Corporation purchased a business auto policy from AHA for $1,000,000 that included a deductible of $250,000. Additionally, Griffon Corporation provided collateral in the form of surety bonds and escrowed monies up to $250,000. AHA argues that, due to this deductible and collateral to support the deductible, Griffon Corporation was self-insured. However, the key to determining whether a party is self-insured is to determine who retains the risk of loss. In this situation, although Griffon retained the risk of loss for the first $250,000, AHA held a risk of loss of $750,000. Clearly, this was not a situation in which the risk of loss never left the corporation. InTucker, the Twelfth District Court of Appeals held that even a minuscule risk of loss transferred to the insurance company destroyed any allegation that the corporation was self-insured in the practical sense.Tucker, supra (holding that a bankruptcy clause in an insurance policy where the deductible was equal to the limits of liability prevented the risk of loss from remaining entirely with the corporation and thus prevented the corporation from being self-insured in the practical sense). As in Tucker, the Griffon Corporation did not retain 100 percent of the risk of loss. Therefore, Griffon Corporation was not self-insured in the practical sense and is not exempt from R.C. 3937.18. The trial court did not err in so concluding. This assignment of error is without merit and is overruled.
Fourth Assignment of error:
 {¶ 43} AHA argues that the trial court erred in denying its motion for summary judgment on the ground that Griffon Corporation had selected the statutory minimum amounts of UM/UIM coverage. We disagree.
 {¶ 44} At the time of the accident, R.C. 3937.18 provided:
 {¶ 45} "(C) A named insured or applicant may reject or accept both coverages as offered under division (A) of this section or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. The schedule of limits approved by the superintended may permit a named insured or applicant to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile liability or motor vehicle liability policy of insurance under which the coverages are provided * * * a named insured`s or applicant's selection of such coverages * * * shall be in writing and shall be signed by the named insured or applicant. A named insured's * * * written, signed selection of such coverages * * * shall be effective on the day signed, shall create a presumption of an offer of coverage consistent with division (A) of this section and shall be binding * * *."
 {¶ 46} However, despite this legislation, the Ohio Supreme Court has held that a selection form as described in the statute must still comply with the substantive requirements of Linko v. Indemnity Ins. Co.of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92. Kemper v. Michigan Mut. Ins.Co., 97 Ohio St.3d 162, 2002-Ohio-7101. In Linko, the Ohio Supreme Court described what language needed to be included in an UM/UIM coverage rejection form in order for it to meet the offer requirement of R.C.3937.18(C). Linko, supra. The Court stated that the required elements for a written offer are (1) a brief description of the coverage, (2) the premium for that coverage, and (3) an express statement of the UM/UIM coverage limits. Id. at 449.
 {¶ 47} In Manalo v. Lumberman's Mut. Cas. Co., Montgomery App. No. 19391, 2003-Ohio-613, this Court looked at a selection form. The selection form in Manalo described the UM/UIM coverage as "Uninsured Motorists Coverage provides payments for all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle.' The damages must result in `bodily injury' or `property damage' sustained by the `insured' caused by an accident." Id. at ¶ 17. The form then provided an express statement of the coverage limits as follows:
 {¶ 48} "Your policy has been issued with Uninsured Motorists Coverage at a limit equal to your liability limit. You may choose to reject this coverage or select a limit not less than $25,000, which is legally required by the Ohio Financial Responsibility Law. If you choose a lower limit or reject this coverage, complete the bottom of this form and return it to you agent/broker.
 {¶ 49} "The available limits for Uninsured Motorists Coverage are as follows:
"$25,000 $100,000 $1,000,000
"$50,000 $250,000". Id. at ¶ 19-22.
 {¶ 50} The Manalo selection form had a box next to the statement "I request Uninsured Motorists Coverage at the following limit _______" that was checked, and the amount "$100,000" was typed on the line. Id. at ¶ 23. The Manalo selection form did not state the premium for the selected coverage, and the Declarations page of the policy only stated that Uninsured and Underinsured coverages were "included" in the premium for the liability coverage. Id. at ¶ 24. Since the selection form even when combined with the policy did not list the separate premiums for the various separate UM/UIM coverages, we stated that this without more would fail to meet the Linko requirements for a valid offer and rejection as it did not include a statement of the premium for the selected coverage. Id. at ¶ 24 27.
 {¶ 51} In the instant case, the selection form and policy are remarkably similar to that in Manalo. AHA's selection form describes the UM/UIM coverage as follows:
 {¶ 52} "Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury sickness or disease, including death resulting therefrom. Underinsured Motorists Coverage provides insurance for protection against loss for bodily injury, sickness or disease, including death, where the limit of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured is less than the limit for the Uninsured Motorists Coverage under your policy at the time of the accident."
 {¶ 53} Under this description, the selection form offers three options (1) a UM/UIM limit that is equal to the limit of insurance on the policy, (2) a rejection of the UM/UIM coverage afforded in the policy, or (3) a lower limit of liability for the UM/UIM coverage afforded in the policy of $12,500 for each person and $25,000 for each accident. The third option in the underlying policy is checked, and the form is signed. The form does not contain a date or a reference to a particular policy. The declarations page of the business auto policy and the schedule on the Driver Other Car Endorsement for the UM/UIM coverage lists the premium for the UM/UIM coverage as only "included". As in Manalo, there is no separate breakdown of what the premiums are for the different UM/UIM coverage selections. This selection form contains the same fatal error as in Manalo in failing to state the premium and therefore does not meet theLinko requirements for a valid offer and rejection of UM/UIM coverage.
 {¶ 54} AHA argues that this court erred in concluding in Manalo
that a premium labeled as "included" does not fulfill the Linko
requirements. AHA argues that "included" merely connotes that the premium would be the same regardless of whether the named insured chose the maximum coverage, the statutory minimum coverage, or no UM/UIM coverage. We do not agree. We find that this argument is unpersuasive as it is illogical that an insured would choose minimum coverage or opt for no coverage when for the same premium it could have the maximum coverage. We do not think our reasoning in Manalo is flawed and find that the selection form signed by Griffon fails to meet the Linko requirements as there is no statement of the premium for the selected coverage. Thus, the trial court did not err in determining that the selection form did not meet the Linko requirements and that the form was invalid. The fourth assignment of error is without merit and is overruled.
 {¶ 55} The judgment of the trial court is affirmed in part and reversed and remanded in part.
WOLFF, J. and GRADY, J., concur.