OPINION
{¶ 1} Appellant Salvatore Gentile appeals the decision of the Stark County Court of Common Pleas that determined Appellees Westchester Fire Insurance Company ("Westchester") and Indemnity Insurance Company of North America ("Indemnity") are self-insured and therefore, did not have to comply with the requirements of R.C. 3937.18. The following facts give rise to this appeal.
 {¶ 2} The accident that resulted in this lawsuit occurred on September 20, 1997, when Michael Sholtis' vehicle struck appellant's vehicle while traveling on State Route 77. Appellant suffered injuries from the accident. On the date of the accident, Progressive Insurance Company ("Progressive") insured Mr. Sholtis' vehicle with liability limits of $12,500 per person and $25,000 per accident. Progressive offered its liability limit of $12,500 in exchange for a release. Appellant accepted Progressive's offer and settled with Sholtis on January 14, 1998.
 {¶ 3} The record further indicates that, at the time of the accident, appellant was operating a vehicle owned by Autumn Tolfo. Westfield Insurance Company ("Westfield") insured Tolfo with UM/UIM motorist coverage in the limit amount of $100,000 per person and $300,000 per accident. Westfield paid appellant its policy limits, after deducting the $12,500 appellant previously received from Progressive. Thus, appellant recovered a total of $100,000.
 {¶ 4} On the date of the accident, appellant was employed by Ashland, Inc., ("Ashland") d.b.a. SuperAmerica. Ashland had the following two policies in effect. The first policy was a blanket liability policy which provided liability coverage in the limit amount of $2,500,000. The policy had a matching deductible of $2,500,000 per occurrence. Ashland also had in effect a catastrophic liability policy (umbrella policy) issued by Westchester, in the limit amount of $2,500,000. The declaration page of the policy indicates the self-insured retention is $2,500,000 per occurrence.
 {¶ 5} On November 1, 2001, appellant filed a declaratory judgment action against Indemnity and Westchester seeking a declaration that he is entitled to UIM coverage under the policies issued, to Ashland, by Indemnity and Westchester. In his complaint, appellant claims he is entitled to UIM coverage, under both policies, by operation of law, because neither policy contains a valid and enforceable written offer and rejection or reduction of UIM coverage as required by R.C. 3937.18.
 {¶ 6} The parties submitted this matter, to the trial court, on motions for summary judgment. On December 18, 2002, the trial court granted Indemnity's and Westchester's motions for summary judgment and concluded that both policies are self-insurance, in the practical sense, and therefore, neither insurance company was required to offer UM/UIM coverage pursuant to R.C. 3937.18.
 {¶ 7} Appellant timely filed his notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 8} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES INDEMNITY AND WESTCHESTER AND IN DENYING SUMMARY JUDGMENT TO APPELLANT."
 "Summary Judgment Standard" {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 12} It is based upon this standard that we review appellant's assignment of error.
 I {¶ 13} In his sole assignment of error, appellant maintains Ashland is not a self-insured entity. We agree.
 {¶ 14} Appellant sets forth several arguments for our consideration. Appellant contends Ashland is not a self-insured employer because it does not have a certificate of self-insurance or proof of a financial responsibility bond as required by Ohio law. R.C. 4509.45 sets forth the various methods for proving financial responsibility. This statute provides that proof of financial responsibility may be given by filing any of the following:
"* * *
 {¶ 15} "(A) A financial responsibility identification card as provided in section 4509.104 * * * of the Revised Code;
 {¶ 16} "(B) A certificate of insurance as provided in section4509.46 or 4509.47 of the Revised Code;
 {¶ 17} "(C) A bond as provided in section 4509.59 of the Revised Code;
 {¶ 18} "(D) A certificate of deposit of money or securities as provided in section 4509.62 of the Revised Code;
 {¶ 19} "(E) A certificate of self-insurance, as provided in section 4509.72 of the Revised Code, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to the self-insurer.
"* * *"
 {¶ 20} Further, appellant maintains Ashland does not have a certificate of self-insurance, a necessary requirement under R.C. 4509.72, in order to qualify as a self-insurer. This statute provides, in pertinent part:
"* * *
 {¶ 21} "(B) The registrar shall issue a certificate of self-insurance upon the application of any such person who is of sufficient financial ability to pay judgments against him.
 {¶ 22} "A certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury liability, or both."
 {¶ 23} Therefore, appellant concludes that because Ashland does not meet the statutory requirements to be self-insured, R.C. 3937.18 is applicable to Indemnity's and Westchester's policies and UM/UIM coverage arises by operation of law.
 {¶ 24} The only Ohio Supreme Court case to address the self-insured issue is Grange Mut. Cas. Co. v. Refiners Transport andTerminal Corp. (1986), 21 Ohio St.3d 47. In Grange, the Court concluded that "[t]he uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at syllabus. The Grange case involved the death of an employee, while driving a tanker truck, in the course of his employment, owned by his employer, Refiners Transport and Terminal Corporation ("Refiners"). Id. at 47. Refiners met state financial responsibility requirements by utilizing a hybrid program consisting of a financial responsibility bond for the first $100,000 of loss coupled with excess insurance coverage, none of which contained uninsured motorist coverage. Id.
 {¶ 25} On appeal to the Ohio Supreme Court, the Court framed the issue before it as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements concerning uninsured motorist coverage contained in R.C. 3937.18 relative to employees injured in the course of employment while driving or occupying a vehicle owned by the employer." Id. at 48. In addressing this issue, the Court concluded that Refiners was not a "self-insurer" in the legal sense contemplated by R.C. 4509.45(D) and R.C. 4509.72. Id. at 49. However, in the practical sense, Refiners was self-insured because it was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim. Id. Thus, as a bond principal, R.C. 3937.18 did not apply. Id. at 51.
 {¶ 26} Appellant maintains neither Indemnity nor Westchester have produced a certificate of self-insurance or a copy of an employer's financial responsibility bond for Ashland. Therefore, under the Supreme Court's decision, in Grange, the policies issued to Ashland are not exempt from the mandatory offering requirements of UM/UIM coverage under R.C. 3937.18.
 {¶ 27} We conclude the Supreme Court's decision, in Grange, is not dispositive of this issue on appeal because Grange did not involve a fronting policy with matching liability limits and deductible. The Court did not address the issue of whether "fronting" or "matching deductible" agreements constitute self-insurance. However, several decisions from this court have addressed the issue raised in this appeal. One of the earliest opinions to do so is Rupple v. Moore, Ashland App. No. 02-COA-003, 2002-Ohio-4873. The Rupple decision addresses a "fronting" or "matching deductible" policy of insurance issued to the injured party's employer, ConAgra. Id. at ¶ 17. The policy, issued by Continental Casualty Company ("Continental"), provided a liability limit of two million dollars and a matching deductible of two million dollars. Id. The policy required ConAgra to reimburse Continental for any claims paid on its behalf. Id.
 {¶ 28} We concluded ConAgra was self-insured under the "fronting" or "matching deductible" policy issued by Continental and therefore, was not subject to the provisions of R.C. 3937.18. Id. at ¶ 24. In reaching this conclusion, we relied upon the Supreme Court's decision inGrange. We also relied upon the case of Lafferty v. Reliance Ins. Co.
(S.D.Ohio 2000), 109 F. Supp.2d 837 . In Lafferty, the plaintiff was seriously injured in a motor vehicle accident while driving a truck belonging to his employer. Id. at 838. After asserting claims against the driver who caused the accident, plaintiff asserted a claim against his employer's insurer. Id. Plaintiff's employer had a commercial automobile liability policy with a matching liability limit and deductible of five million dollars. Id. The employer had rejected UM/UIM coverage under said policy. Id. at 838-840. Plaintiff argues that, notwithstanding his employer's rejection of UM/UIM coverage, his employer's insurer had failed to comply with this state's requirements regarding the offering and rejection of UM/UIM coverage. Id. at 840.
 {¶ 29} The Lafferty court determined that plaintiff's employer was, in effect, a self-insurer by virtue of the matching deductible policy. Id. at 842. Thus, the court concluded the policy was not subject to the provisions of R.C. 3937.18. Id.
 {¶ 30} Following our decision, in Rupple, this court again addressed the self-insurance issue in Dalton v. The Travelers Ins. Co., Stark App. Nos. 2001CA00380, 2001CA00393, 2001CA00407, 2001CA00409,2002-Ohio-7369. The Dalton decision involved numerous insurance companies. However, for purposes of this appeal, we will address two policies issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National"). The policies were issued to the decedent's son's employer, Collins Aikman Corporation d.b.a. The Akro Corporation ("Akro"). Id. at ¶ 6. The decedent's son sought coverage under these two policies pursuant to the Scott-Pontzer[1] decision. Id. at ¶ 140. The first policy was a commercial automobile policy with limits of $2,000,000. Id. at ¶ 146. The second policy was a general liability policy with limits of $1,000,000. Id. The payment agreement made Collins responsible upon billing for each payment made, under the policy, up to $500,000 for the commercial automobile policy and $1,000,000 for the general liability policy. Id. In order to secure the amounts that may be paid, Collins was required to provide a promissory note and a security acceptable as collateral. Id.
 {¶ 31} Plaintiff argued on appeal that the two policies were not fronting policies or self-insurance because National had neither a certificate of self-insurance nor a copy of an employer financial responsibility bond. Id. at ¶ 142. Relying upon the Grange decision, supra, we determined "* * * our inquiry is whether National's policies make the employer, Collins, ultimately responsible under the terms of the agreement. Does Collins bare (sic) the risk of loss up to the retained amounts?" Id. at ¶ 145. We answered the question in the affirmative because "[i]n order to secure the amounts that may be paid, Collins * * * [was] required to provide a promissory note and a security acceptable as collateral." Id. at ¶ 146.
 {¶ 32} Thus, we concluded as follows:
 {¶ 33} "Based upon these documents, we find Collins is responsible for payments made to claimants under the policy up to the retained amounts. By agreeing to reimburse and provide a promissory note and security, Collins is self-insured up to the retained amounts because the risk of loss had not shifted away from Collins. Collins is self-insured up to $500,000 under the commercial automobile policy and up to the policy limit of $1,000,000 under the general liability policy. Collins is insured in the traditional sense for the remaining 1.5 million of the commercial automobile policy. R.C. 3937.18 does not apply to Collins and the National policies up to the retained amounts, but does apply to the 1.5 million." Id.
 {¶ 34} The third case from this district to address the self-insured issue is Jordan v. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002CA00248, 2003-Ohio-1309. We found the facts of Jordan analogous to the Dalton case. In Jordan, Travelers and Sally Beauty Company ("Sally Beauty"), the employer of the injured party's husband, entered into an agreement whereby Travelers would administer claims under Sally Beauty's $250,000 deductible and Sally Beauty would indemnify and hold Travelers harmless from and against any claims falling within the deductible. Id. at ¶ 55. Sally Beauty was required to provide Travelers with a letter of credit to secure Sally Beauty's obligations. Id. If Sally Beauty defaulted under the agreement, Travelers had the right to immediately terminate the partial fronting program and satisfy any amounts due by drawing upon the full amount of the letter of credit. Id.
 {¶ 35} We concluded Sally Beauty was self-insured for the following reasons:
 {¶ 36} "Because Sally Beauty agreed to reimburse the insurance company for payments made by the insurance company under the policy up to the retained amounts (or deductible) and to provide a Letter of Credit upon which Travelers could draw in the case of default, we find that Sally Beauty was self-insured for the amount of the deductible, or $250,000.00. Therefore, R.C. 3937.18 does not apply up to $250,000.00 but does apply to the amounts over $250,000.00. In other words, the UM/UIM coverage would be for damages after they exceeded $250,000.00 and only to the extent the damages did not exceed the One Million Dollar limit of the commercial auto liability policy." Id. at ¶ 56.
 {¶ 37} The most recent case from this district to address the self-insured issue is DeLong v. Myers, Knox App. No. 02CA000035,2003-Ohio-2702. As in Rupple, the DeLong decision addressed a "fronting" or "matching deductible" policy issued by Continental to ConAgra. Id. at ¶ 9. On appeal, plaintiff argued ConAgra was not self-insured and therefore, must comply with the mandatory provisions of R.C. 3937.18. Id. at ¶ 7. As in the Rupple decision, we once again found ConAgra to be self-insured. Id. at ¶ 16. Plaintiff argued the Rupple panel failed to address the ramifications of the bankruptcy provision in the Continental business automobile policy which provided that, "Bankruptcy or insolvency of the `insured' or the `insured's' estate will not relieve us of any obligation under this Coverage Form." Id. at ¶ 11.
 {¶ 38} Plaintiff argued that because of the bankruptcy provision, the policy was not a true fronting policy. Instead, plaintiff maintained it was an insurance agreement where the insured retained the risk of loss in the event it was solvent and able to pay, but the risk of default as a result of bankruptcy or insolvency of the insured, or its subsidiaries, falls upon the insurance company. Id. at ¶ 12. Plaintiff maintained this provision indicated the transfer of some risk of loss, thereby negating the conclusion that ConAgra was self-insured. Id.
 {¶ 39} We disagreed there was a shift of risk of loss and concluded:
 {¶ 40} "Included in the reimbursement and security agreement, Section III(A) and (B), attached to Continental's motion for summary judgment at Exhibit A, are the assumptions by ConAgra of investigation, payment of all losses, administrative service fees, costs and expenses. Further, ConAgra is to provide a `letter of credit' as collateral or `a collateral trust * * * with a third party trustee." * * * The policy further lists as an incident for default the failure to provide a letter of credit to Continental."
 {¶ 41} "In the event of a bankruptcy, there is a fund via the letter of credit or collateral trust provided by ConAgra that would generate the costs associated with any losses paid by Continental. In this regard, the risk of loss is not shifted to Continental but is secured by the letter of credit or collateral trust." Id. at ¶ 14, ¶ 15.
 {¶ 42} Therefore, we concluded ConAgra was self-insured in the practical sense. Id. at ¶ 16.
 {¶ 43} The analysis contained in the above four cases, from this appellate district, clearly establishes that in determining whether a company is self-insured, our focus is on whether the company bears the ultimate risk of loss. In order to make this determination, we must not only review the language of the insuring agreement, but we must also consider what other actions have been taken to ensure that the company ultimately bears this loss.
 {¶ 44} In his brief, appellant cites a decision from the Tenth District Court of Appeals. In Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015, the Franklin County Court of Appeals addressed the concept of self-insurance and stated:
 {¶ 45} "In determining whether an entity is self-insured, courts look at who bears the risk of loss. `Self-insurance is not insurance; it is the antithesis of insurance.' Physicians Ins. Co. of Ohio v.Grandview Hosp. Med. Ctr. (1988), 44 Ohio App.3d 157, 158,542 N.E.2d 706. This notion was reiterated in Jennings v. Dayton
(1996), 114 Ohio App.3d 144, 682 N.E.2d 1070, wherein the Montgomery County Court of Appeals stated:
 {¶ 46} "While insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting. Rather, in the self-insurance context, the risk is borne by the one whom the law imposes it. The defining characteristic of insurance, the assumption of specific risks from customers in consideration for payment, is entirely absent where an entity self-insures. * * * Id. at 148
 {¶ 47} "The Jennings court held, therefore, that `self-insurance' is the legal equivalent of no insurance for purposes of the distribution of UM/UIM benefits in accordance with R.C. 3937.18(A)." Id. at 26-27.
 {¶ 48} We will now apply the above case law to the two policies under consideration in the case sub judice.
 "A. Indemnity Policy" {¶ 49} As noted above, the Indemnity policy is a blanket liability policy which provides liability coverage in the limit amount of $2,500,000. The policy has a matching deductible in the amount of $2,500,000 per occurrence. In order for Ashland to be self-insured under the terms of the Indemnity policy, we must determine whether Ashland remains ultimately responsible under the terms of the insuring agreement and bears the risk of loss up to the retained amounts?
 {¶ 50} Indemnity relies upon the following language, in its policy, to conclude Ashland is self-insured. First, Indemnity claims Ashland is self-insured because Ashland assumed the risk of loss up to the policy limits when it agreed to a deductible amount which matched the liability limit. Second, Indemnity contends Ashland did not shift the risk of loss to it because Ashland is required to indemnify Indemnity for any payments made for covered claims or losses under the policy. Finally, Indemnity contends Ashland is required to reimburse Indemnity for any administrative costs or expenses incurred in processing claims made under the policy. Based upon these requirements, Indemnity concludes Ashland is self-insured and therefore, Ashland was not subject to the requirements of R.C. 3937.18.
 {¶ 51} We find the above language does not establish that Ashland is self-insured because the record does not indicate that Ashland is ultimately responsible under the terms of the insurance agreement. Although, under Rupple, this court found the employer to be self-insured under a "fronting" or "matching deductible" policy, our analysis, under the Dalton, Jordan and DeLong decisions, also requires evidence that the employer bears the ultimate risk of loss. We have determined that either bonds, promissory notes or letters of credit establish that an employer is self-insured because even in the event of bankruptcy, the risk of loss remains with the employer. See DeLong, supra, at ¶ 15.
 {¶ 52} In the case sub judice, we have reviewed Indemnity's policy issued to Ashland. The policy does not establish that Ashland bears the ultimate risk of loss. Ashland was not required to provide Indemnity with secured bonds, promissory notes or letters of credit. In fact, language in the policy indicates that:
 {¶ 53} "1. If the Named Insured, or a Claims Servicing Organization acting on behalf of the Named Insured, fails to pay any Damages within the deductible amount after the legal obligation of the Insured becomes definitely determined, IND shall pay such Damages and the Named Insured shall reimburse IND promptly for any part of the deductible amount that has been paid by IND." See Endorsement Number 3, "DEDUCTIBLE — PER-OCCURRENCE, at paragraph 1.
 {¶ 54} Pursuant to this language, Indemnity is required to pay the deductible amount if Ashland fails to do so. Although the agreement requires Ashland to reimburse Indemnity if they pay damages on Ashland's behalf, this obligation to reimburse Indemnity is not secured by bonds, promissory notes or letters of credit. Therefore, we conclude the ultimate risk of loss remains with Indemnity. We do not believe this type of reimbursement arrangement is sufficient to make Ashland self-insured in the practical sense.
 B. "Westchester Policy" {¶ 55} The Westchester policy is an umbrella policy with a limit of liability of $2,500,000 and a self-insured retention of $2,500,000. Westchester contends Ashland is self-insured pursuant to the following language contained in the policy:
 {¶ 56} "THE COMPANY AGREES TO PAY ON BEHALF OF THE INSURED THE ULTIMATE NET LOSS IN EXCESS OF THE RETAINED LIMIT HEREINAFTER STATED, WHICH THE INSURED MAY SUSTAIN BY REASON OF THE LIABILITY IMPOSED UPON THE INSURED BY LAW, ARISING OUT OF AN OCCURRENCE OR ASSUMED BY THE INSURED UNDER CONTRACT FOR:
 {¶ 57} "(A) PERSONAL INJURY LIABILITY;
 {¶ 58} "(B) PROPERTY DAMAGE LIABILITY, OR
 {¶ 59} "(C) ADVERTISING LIABILITY.
"* * *"
 {¶ 60} See Commercial Comprehensive Catastrophe Liability Policy, Insuring Agreements, Section I, Coverages, at Page 1 of 14.
 {¶ 61} The policy also provides that:
 {¶ 62} "WITH RESPECT TO COVERAGES I(A), I(B), OR I(C), OR ANY COMBINATION THEREOF, THE COMPANY'S LIABILITY SHALL BE ONLY FOR THE ULTIMATE NET LOSS IN EXCESS OF THE INSURED'S RETAINED LIMIT BEING THE GREATER OF:
 {¶ 63} "(A) THE TOTAL OF THE APPLICABLE LIMITS OF THE UNDERLYING POLICIES LISTED IN SCHEDULE A HEREOF, AND THE APPLICABLE LIMITS OF ANY OTHER UNDERLYING INSURANCE COLLECTIBLE BY THE INSURED; OR
 {¶ 64} "(B) AN AMOUNT AS STATED IN ITEM 4(C) OF THE DECLARATIONS AS TO THE RESULT OF ANY ONE OCCURRENCE NOT COVERED BY THE SAID POLICIES OF INSURANCE;
 {¶ 65} "AND THEN UP TO AN AMOUNT NOT EXCEEDING THE AMOUNT AS STATED IN ITEM 4(A) OF THE DECLARATIONS AS THE RESULT OF ANY ONE OCCURRENCE. THERE IS NO LIMIT TO THE NUMBER OF OCCURRENCES DURING THE POLICY PERIOD FOR WHICH CLAIMS MAY BE MADE, EXCEPT THAT THE LIABILITY OF THE COMPANY ON ACCOUNT OF OCCURRENCES DURING EACH POLICY YEAR SHALL NOT EXCEED THE AGGREGATE AMOUNT STATED IN ITEM 4(B) OF THE DECLARATIONS * * *." See Commercial Comprehensive Catastrophe Liability Policy, Insuring Agreements, Section V, Retained Limit — Limit of Liability, at pages 5-6 of 14.
 {¶ 66} Westchester contends that the risk of loss remains with Ashland because its liability is "only for the ultimate net loss in excess of the insured's retained limit." As with the Indemnity policy, Westchester's policy also does not indicate that Ashland bears the ultimate risk of loss. Language in the policy indicates that Westchester only agrees to pay on behalf of Ashland the ultimate net loss in excess of $2,500,000. However, Ashland has not established that it is self-insured for the amount less than $2,500,000 by secured bonds, promissory notes or letters of credit.
 {¶ 67} Thus, we conclude the trial court erred when it determined Ashland was self-insured and that its policies with Indemnity and Westchester were not subject to the requirements of R.C. 3937.18. Accordingly, Indemnity and Westchester were required to offer UM/UIM coverage under their respective policies of insurance.
 {¶ 68} Appellant also sets forth arguments, in his brief, concerning whether UM/UIM coverage arises by operation of law under the policies, whether appellant qualifies as a UIM insured under the policies and whether any notice or subrogation provisions, in the policies, have been violated. The trial court did not have an opportunity to address these issues due to its determination that Ashland is self-insured. Therefore, pursuant to our decision that Ashland is not self-insured, we remand this matter to the trial court for the court to address these remaining issues.
 {¶ 69} Appellant's sole assignment of error is sustained.
 {¶ 70} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
By: Wise, J., Farmer, J., concurs.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.